UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETER JAMES CARR,

                Petitioner,

     v.

RONALD HAYNES,

                Respondent.

Case No. C17-1326-RAJ-MAT

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, a state prisoner who is currently confined at Stafford Creek Corrections Center in Aberdeen, Washington, seeks relief under 28 U.S.C. § 2254 from a 2012 King County Superior Court judgment and sentence. (Dkt. 9.) He raises a single issue: the sufficiency of the evidence to convict him of first-degree child molestation and communicating with a minor for immoral purposes. (*Id.*) Respondent filed an answer and submitted relevant portions of the state court record. (Dkts. 22-24.) Petitioner filed a response to respondent's answer. (Dkt. 25.) After reviewing petitioner's response, the Court granted him leave to file an amended petition because he raised issues that were beyond the scope of his sufficiency of the evidence claim. (Dkt. 26.) In response, petitioner filed a motion asking the Court to rule on the original habeas petition. (Dkt.

REPORT AND RECOMMENDATION - 1

1   27.) Petitioner's motion to rule on his original petition (Dkt. 27) is GRANTED.

2   Having considered the parties' submissions, the balance of the record, and the governing

3   law, the Court recommends that petitioner's habeas petition be DENIED without an evidentiary

4   hearing, this action be DISMISSED with prejudice, and a certificate of appealability be DENIED.

## II.   BACKGROUND

The Washington State Court of Appeals ("Court of Appeals"), on direct appeal, summarized the facts relevant to petitioner's conviction as follows:

> In June 2011, when 8-year-old M.L. was shopping at the Deseret Industries thrift store with her mother and her two sisters, a man in the store touched M.L.'s breast area over her shirt. M.L. testified that it was Carr who touched her left breast with his right hand and that his hand "went across" her breast for a period of one second. M.L. stated that Carr did not look at her, did not say anything to her, and did not make any sounds during the encounter.[1] After demonstrating in court the manner in which she had been touched and, in response to the prosecutor's question, "[a]nd what you just demonstrated was rubbing one hand across your breast?" M.L. answered affirmatively. Additionally, prior to testifying in court, M.L. met with a child interview witness specialist and, in a recorded interview, demonstrated five times how the man touched her. During four of the demonstrations, M.L. quickly ran her hand over her breast area, applying minimal pressure.[2] However, during one of the demonstrations, M.L. appeared to apply more pressure, and to move her hand back and forth across her breast area. Also, during this interview, when asked how she was touched, M.L. said, "He just rubbed like that." This recorded interview was shown to the jury.
>
> After the incident, M.L. found her mother, Alma Lopez, at the store and told Lopez that a man had touched her. Her mother did not report the incident to the police or to store personnel at that time. Three days later, Lopez decided to return to Deseret Industries with her daughters to see if M.L. would recognize the man who had touched her. Although M.L. did not want to go to the store and was visibly upset, once they were inside, she told Lopez that the man who had touched her was in the store; however, she did not identify him.

---

[1] [Court of Appeals footnote 1] Exhibit 4 is the compact disc recording of M.L.'s interview with a King County Prosecutor's child interview witness specialist, which was viewed by the jury. The transcript of that interview was marked as Exhibit 3 but not admitted into evidence.

[2] [Court of Appeals footnote 2] After the incident, but before being interviewed by the witness specialist, M.L. also demonstrated to her older sister how she had been touched, who described it as follows: "She took her right hand and swiped it across her chest."

REPORT AND RECOMMENDATION - 2

Subsequently, Lopez returned to the store with her children several times. During one visit, Lopez discovered that a man in the store was following them and was staring at M.L. During a later visit, on June 17, 2011, M.L. identified Carr as the man who had touched her, and Lopez notified a store employee who called the manager. The manager approached Carr and said, "it's been reported that you caused a disturbance in the store." Carr hastily left the store. The police were called and officers came to the store and spoke to M.L. and her family. One of the officers asked M.L. to show him how the man had touched her and, obliging, she "used her right hand, open hand, and then rubbed it across her breast line . . . [b]ack and forth a few times."

With regard to the touching of M.L., the State charged Carr by information with child molestation alleged to have occurred between June 1 and June 10, 2011. At trial, Carr asserted an alibi defense but also testified that he had not touched M.L. in the thrift store. Although neither Lopez nor Angelina—M.L.'s older sister— could pinpoint the date of the incident during which M.L. was touched, Lopez testified that it was on a Saturday between 11:30 a.m. and noon. The testimony of two thrift store employees supported the conclusion that the date of the incident had to have been either Saturday, June 4 or Saturday, June 11. The State requested, and was allowed, to amend the information to allege that the crime took place between June 1 and June 14, 2011. In support of the alibi defense, Carr's employer testified that Carr was working from 5 a.m. to 2 p.m. on both June 4 and June 11.

Soon after the incident involving M.L., a man lowered his pants and exposed part of a women's bathing suit he was wearing to nine-year-old K.W. while she was shopping at a Goodwill store with her mother. This took place on either June 21 or June 29, 2011. K.W. was shopping in the girl's clothing section and her mother was looking at women's clothing nearby. K.W. encountered a man who showed her a leotard on a hanger and asked her if she liked it, adding that he liked it. K.W. did not say anything to the man and walked away. She went to a different aisle and the man followed her; she again went to a different aisle and again the man followed her. At that point, K.W. testified, the man, who was about 10 feet away, looked down and pulled his pants down to the end of his underwear, which K.W. described as a "pink, sparkly bikini bottom." K.W. stated that his pants were down for a few seconds, that he appeared to be "scratching his butt," and that he was grinning. Additionally, K.W. thought he had pulled his pants down on purpose. In response to the prosecutor's question, "Could you see the man's privates?" K.W. said that she could not. However, K .W.'s mother, in response to the prosecutor's question as to whether K.W. had been able to see the man's genitalia, said that K.W. "said she could see the shape of it, with the tight-fitting bikini bottom."

Following this incident, K.W. walked quickly back to her mother, who was in the women's section of the store. Although she told her mother that a man had talked to her, she waited until they had left the store to report that the man had showed her his underwear. She waited, she explained, because she considered it a private subject that was "weird" to talk about. Once they returned home, K.W.'s mother

REPORT AND RECOMMENDATION - 3

called the police.

The police obtained surveillance video showing Carr entering the Goodwill store at 3:56 p.m., leaving at 4:29 p.m., re-entering at 5:09 p.m., K.W. and her mother entering at 5:15 p.m., and Carr leaving at 5:20 p.m.[3] Police circulated an alert to retail security with a still picture. On July 7, 2011, after Sears' security staff recognized Carr, the police arrested him in his van in a nearby parking lot. When he was arrested, Carr was wearing a bright pink women's swimsuit under his clothing. Carr owned two women's one-piece bathing suits that he wore under his clothing when he was at home and sometimes in public.

The King County Prosecutor charged Carr with one count of child molestation in the first degree and one count of communicating with a minor for immoral purposes. Prior to trial, Carr's attorney moved to sever the two charged counts for trial. This motion was denied. Carr's attorney did not thereafter renew the severance motion before or at the close of the evidence. The jury found Carr guilty on both counts. The trial court imposed a sentence of a maximum of life in prison with a minimum of 68 months of incarceration on the child molestation charge and a consecutive 364-day suspended sentence on the charge of communicating with a minor for immoral purposes.

*State v. Carr*, 179 Wash. Ct. App. 1031, at *1 - *3 (Feb. 18, 2014) (unpublished); *see also* Dkt. 24, Ex. 18 at 2-5. On direct appeal, the Court of Appeals affirmed, and the Washington Supreme Court summarily denied the petition for review.[4] (Dkt. 25, Exs. 14-15, 18-23.)

### III.    GROUND FOR RELIEF

Petitioner identifies the only ground for federal habeas relief as follows: "My constitutional right to due process was violated when the State of Washington failed to provide sufficient evidence, at trial, to prove the essential elements of both of the crimes of which I was

---

[3] [Court of Appeals footnote 3] Although these times are three hours behind the time stamps reflected by the surveillance video, Officer Kristopher Krusey explained that, during the course of his investigation, he discovered that there was a three-hour discrepancy between the time stamp and the actual time when the video was recorded. Report of Proceedings (March 28, 2012) at 749-50.

[4] The remaining procedural history is not relevant.

REPORT AND RECOMMENDATION - 4

1  wrongfully convicted."[5]  (Dkt. 9 at 5.)  The State concedes that petitioner properly exhausted this

2  claim by raising it before the Court of Appeals and Washington Supreme Court on direct appeal.

3  (Dkt. 22 at 6.)

## IV.   DISCUSSION

### A.   Standard of review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof.  *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013).

Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state

---

[5] In his reply brief, petitioner raises several issues that extend beyond the scope of a sufficiency of the evidence claim: his due process rights were violated when the police failed to collect and turn over exculpatory evidence (Dkt. 25 at 8 (citing Dkt. 9-1 at 21-28)); his conviction was based on perjured testimony that was elicited through prosecutorial misconduct (*id.* at 15-16 (citing Dkt. 9-1 at 34-37)); and the jury instructions were inadequate because the jury did not understand them (*id.* at 18-19).  The Court apprised petitioner that these claims did not fall under the umbrella of a sufficiency of the evidence claim and granted him leave to amend (Dkt. 26), but petitioner declined (Dkt. 27).  Accordingly, these arguments will be disregarded as outside the scope of the sole ground for relief raised in petitioner's federal habeas petition.

REPORT AND RECOMMENDATION - 5

court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta. *Id.* "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings."). The Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence."

1  *Miller-El*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

2  B.      Sufficiency of the evidence

3  Petitioner claims that the evidence was insufficient to support his convictions. The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361-64 (1970). In reviewing a claim of insufficiency of the evidence to support a conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *See Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990). Review is sharply limited, and the federal court owes great deference to the trier of fact. *Wright v. West*, 505 U.S. 277, 296-97 (1992). The reviewing court must keep in mind the requirements of state law: "the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Evidence is sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. For example, the jury is entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright*, 505 U.S. at 296. On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2062 (2012) (per curiam) (quoting *Cavazos v. Smith*, 565 U.S. 1 (2011) (quoted source omitted)).

20      1.      *First degree child molestation (Count 1)*

21  The Court of Appeals, on direct review, correctly set forth the substantive elements of first degree child molestation:

> To convict Carr of child molestation in the first degree, the State was required to prove that Carr had sexual contact with a child under the age of 12 who was not his

REPORT AND RECOMMENDATION - 7

>wife or domestic partner and who was at least 36 months younger than him. RCW 9A.44.083(1). The pertinent statute defines "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). The breast area is a sexual or intimate part of a person. *State v. Jackson*, 145 Wn. App. 814, 819, 187 P.3d 321 (2008). Thus, the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that Carr touched M.L.'s breast area for the purpose of sexual gratification.[6]

*Carr*, 179 Wash. Ct. App. 1031, at *3. The court went on to conclude that the evidence was sufficient to support petitioner's conviction:

>Viewing the evidence in the light most favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that Carr touched M.L.'s breast area for sexual gratification. "Proof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touching was for the purpose of sexual gratification." *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991). However, "we require additional proof of sexual purpose when clothes cover the intimate part touched." *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009). Rubbing of an intimate area is sufficient additional proof to establish a sexual purpose. *Harstad*, 153 Wn. App. at 22. Here, the additional proof of sexual purpose is supplied by evidence in the record that Carr rubbed his hand back and forth across M.L.'s breast area.[7] Thus, although M.L. was wearing a shirt that covered her breast area, evidence that Carr rubbed his hand back and forth across her breast area was sufficient to allow a rational trier of fact, viewing the evidence in the light most favorable to the State, to conclude beyond a reasonable doubt that Carr touched M.L.'s breast area for sexual gratification.

---

[6] [Court of Appeals footnote 4]  Pernicious language has been imported into the standard of review: specifically, that evidence of sexual gratification is insufficient if it is "susceptible of innocent explanation." *State v. Powell*, 62 Wn. App. 914, 918, 816 P.2d 86 (1991) (although the court recited the proper standard at the beginning of its opinion, it later indicated that the evidence was insufficient because it was "susceptible of innocent explanation"); *State v. Whisenhunt*, 96 Wn. App. 18, 24, 980 P.2d 232 (1999) (distinguishing *Powell* by holding that the evidence was not open to innocent explanation); *State v. Price*, 127 Wn. App. 193, 202, 110 P.3d 1171 (2005) (also distinguishing *Powell* by holding that the evidence was not "susceptible of innocent explanation"), *aff'd on other grounds*, 158 Wn.2d 630, 146 P.3d 1183 (2006). If this were the standard, "child molestation convictions would be subject to dismissal or reversal simply because a jury could believe a nonsexual explanation for the behavior." *State v. Veliz*, 76 Wn. App. 775, 779 n. 6, 888 P.2d 189 (1995). We adhere to the view we expressed in *Veliz*: "the correct test is that recited by the *Powell* court at the beginning of its opinion: whether, as a matter of law, there is sufficient evidence from which a rational trier of fact could find all the elements of the crime beyond a reasonable doubt. 62 Wn.App. at 916." *Veliz*, 76 Wn. App. at 779 n. 6.

[7] [Court of Appeals footnote 5]  Although evidence as to whether this took place was in conflict, the evidence before the jury was sufficient for the fact finder to find that this occurred. It is for the trial fact finder to resolve conflicts in testimony. *Carver*, 113 Wn.2d at 604.

REPORT AND RECOMMENDATION - 8

*Carr*, 179 Wash. Ct. App. 1031, at *4.

Petitioner maintains that the only evidence introduced at trial suggests fleeting or accidental contact that would be susceptible to innocent explanation. (Dkt. 25 at 6, 13-14.) He asserts that he provided a "rock solid" alibi and that the State did not prove he had any contact with M.L. (*Id.* at 7, 9-11.) He also argues that the State did not prove sexual motivation because M.L. testified at trial that she did not know how to tell whether the touching was on purpose or by accident. (*Id.* at 11-12.) Petitioner questions why M.L.'s mother waited two weeks to report the alleged crime, claiming that this prejudiced him and prevented him from defending himself. (*Id.* at 12-13.) Finally, petitioner challenges the Court of Appeals' characterization of the video of M.L.'s interview with the child witness interview specialist, asserting that the video does not show M.L. rubbing her hand back and forth. (*Id.* at 17 (citing Dkt. 9-1 at 72-73).)

None of petitioner's arguments establish that he is entitled to habeas relief. At trial, M.L. identified petitioner as the man who touched her (Dkt. 24, Ex. 4 at 573), and the jury was entitled to believe this testimony over petitioner's evidence. The State submitted evidence that petitioner touched M.L. on purpose. M.L. testified that the aisle was wide enough for petitioner to have passed her without touching, and that he reached his hand out to touch her. (*Id.* at 552-53.) She demonstrated that he touched her with the open palm of his hand (*see id.* at 545-46), not the back of his hand as one would expect if the touch were accidental. M.L. also testified that it seemed like petitioner touched her on purpose, even though she could not explain why she thought this. (*Id.* at 572-73.)

The Court of Appeals also reasonably determined that the evidence was sufficient to support the jury's conclusion that petitioner touched M.L. for sexual gratification. M.L. demonstrated for the jury how petitioner touched her chest with his right hand, and she agreed with

REPORT AND RECOMMENDATION - 9

the prosecutor's description of her action as "rubbing one hand across your chest." (*Id.* at 545-46.) The video of the interview with the child witness interview specialist shows M.L. demonstrating the touch several times. (Dkt. 4 at 11:51:32-33, 11:53:35-36, 11:53:42-44, 11:54:16.) Although petitioner challenges the Court of Appeals' determination that "during one of the demonstrations, M.L. appeared to apply more pressure, and to move her hand back and forth across her breast area," this factual determination is entitled to the presumption of correctness, which petitioner fails to rebut by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Having reviewed the video, the Court concludes that the Court of Appeals' factual determination is not unreasonable. (*See* Dkt. 4 at 11:53:42-44.) Moreover, Officer Bassage testified that on the day police were called to the store, M.L. showed him how petitioner touched her: "She used her right hand, open hand, and then rubbed it across her breast line . . . [b]ack and forth a few times." (Dkt. 24, Ex. 4 at 598-99.)

In short, the Court of Appeals' decision is neither contrary to nor an unreasonable application of clearly established law, and it is based on a reasonable determination of the facts. Petitioner is not entitled to habeas relief.

    2.    *Communicating with a minor for immoral purposes (Count 2)*

The Court of Appeals, on direct review, correctly set forth the substantive elements of communicating with a minor for immoral purposes:

> RCW 9.68A.090(1) reads, in pertinent part: "[A] person who communicates with a minor for immoral purposes, or a person who communicates with someone the person believes to be a minor for immoral purposes, is guilty of a gross misdemeanor." The word "communicate" means spoken word or course of conduct. *State v. Schimmelpfennig*, 92 Wn.2d 95, 103-04, 594 P.2d 442 (1979). *See also State v. Jackman*, 156 Wn.2d 736, 748, 132 P.3d 136 (2006) ("a defendant communicates with a minor under RCW 9.68A.090 if he or she invites or induces the minor to engage in prohibited conduct"). Ultimately, "the statute prohibits communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct." *State v. McNallie*, 120 Wn.2d 925, 933,

1
2
3

      846 P.2d 1358 (1993).  Accordingly, the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that Carr communicated with K.W. for the predatory purpose of promoting her exposure to and involvement in sexual misconduct.

4  *Carr*, 179 Wash. Ct. App. 1031, at *4.  The court went on to conclude that the evidence was

5  sufficient to support petitioner's conviction:

6
7
8
9
10
11
12

      Viewing the evidence in the light most favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that Carr communicated with K.W. for the predatory purpose of promoting her exposure to and involvement in sexual misconduct.  Carr held up a leotard for K.W. to see and asked her whether she liked it, adding that he did.  When she moved away to a different aisle without answering, he followed her.  When she again moved away to a different aisle, he again followed her.  Finally, when he was a short distance away, while grinning, he pulled down his pants and displayed his pink, sparkly[8] women's bathing suit, which revealed the shape of his genitals.  Based on this set of circumstances, a rational trier of fact could conclude that Carr's actions were meant to invite or induce K.W. to engage in prohibited conduct, thereby promoting her exposure to and involvement in sexual misconduct.[9]

13  *Carr*, 179 Wash. Ct. App. 1031, at *4.

14        The only argument petitioner asserts in his response brief is that no one made a positive

15  identification of him at trial.  (Dkt. 25 at 18.)  Although K.W. was unable to identify petitioner

16  (Dkt. 24, Ex. 5 at 708-10), sufficient evidence supports his conviction.  As the Court of Appeals

17  found, surveillance video placed him in the Goodwill store at the same time as K.W. and her

18  mother.  (*See id.* at 730.)  When he was arrested, he was wearing the same clothes he wore at

19  Goodwill, including the pink bathing suit K.W. identified.  (*Id.* at 696, 734, 740.)  The Court of

20  Appeals reasonably concluded that sufficient evidence supports petitioner's conviction.  Petitioner

21

22        [8] [Court of Appeals footnote 6]  The fact that the underwear was pink is relevant as tending to show that Carr was using it to attract children.  *See State v. Hosier*, 157 Wn.2d 1, 13-14, 133 P.3d 936 (2006).

23        [9] [Court of Appeals footnote 7]  In his statement of additional grounds, Carr asserts that there was insufficient evidence to support his conviction of communicating with a minor for immoral purposes.  We reject his duplicative argument.

REPORT AND RECOMMENDATION - 11

has not shown that he is entitled to habeas relief.

C.  Evidentiary hearing

Petitioner's claims can be resolved by reference to the state court record, and therefore an evidentiary hearing is not necessary. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.").

## V.  CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes that a certificate of appealability should be denied as to plaintiff's sole ground for relief.

## VI.  CONCLUSION

The Court recommends petitioner's habeas petition be DENIED without an evidentiary hearing and this action be DISMISSED with prejudice. The Court further recommends that a certificate of appealability be DENIED as to plaintiff's sole ground for relief. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 11, 2018**.

Dated this 16th day of April, 2018.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13